JUSTICE GRAY,
concurring in part and dissenting in part:
I concur in the opinion of the majority as to the first issue. I must respectfully dissent from that opinion on issue two, which relates to the important question of evidence impeaching the credibility of an alleged incest victim. The majority’s analysis is confused, at best, and legally flawed; the extent of the flaw is apparent even in the majority’s statement of the issues, where the evidence at issue is characterized as “extrinsic evidence, on the issue of physical assault,...” In fact, the issue is whether “extrinsic evidence of prior inconsistent statements of a witness” is admissible under Rule 613(b), M.R.Evid. The majority opinion in this case will create unnecessary confusion and uncertainty for attorneys practicing on both sides of the minefield commonly called criminal law, as well as for the district courts of this state.
This case involves two charges of felony incest against Kowalski for sexual conduct with his daughters M.K. and C.K. My disagreement with the majority is only as to the evidence relating to the charge of incest with daughter C.K. As is not uncommon in sex offense cases of all types, this case boils down to the credibility of the victim and the credibility of the defendant. The importance of the credibility issue is clear from the fact that the State put on several witnesses to opine, without objection, as to C.K.’s truthfulness.
During her testimony, C.K. denied that her father had ever struck her. She also denied ever telling anyone that he had done so. The defense then sought to impeach C.K’s credibility by inquiring of the State witnesses who testified as to C.K.’s truthfulness regarding certain statements C.K. made to them stating that her father had struck her, statements clearly and unequivocally inconsistent with her testimony at trial. As the majority notes, the State objected to Kowalski using extrinsic evidence to impeach C.K. on the collateral issue of physical abuse.
The court sustained the State’s objections, ruling that the physical abuse issue was collateral to the issue of sexual abuse and, therefore, that the impeachment was improper. The majority affirms the District Court on other grounds, purportedly rejecting the “collateral *175 matters rule” and premising its affirmance on Rule 401, M.R. Evid. It is my view that the majority herein did not altogether succeed in divorcing itself from the collateral matters analysis. As a result, the majority never addresses the dispositive issue, whether the statements were Rule 613 prior inconsistent statements admissible for impeachment of C.K. Furthermore, the majority concludes that the evidence was properly excludible under an erroneous Rule 401 relevancy analysis, relying on an entirely inapposite case. The flaws in the majority approach are addressed separately below.
The majority first raises Kowalski’s contention that the “extrinsic evidence” relating to physical abuse was admissible to show C.K’s bias and motive to fabricate the sexual assault. This argument not having been made at the trial, it simply should not be considered by this Court on appeal; the majority should have so stated and moved on. However, rather than take that clear, direct and correct approach to the issue, the majority sets off at some length to insert the question of physical abuse into its opinion. It then cavalierly concludes that C.K’s testimony that her father did not strike her “is of little consequence.” This is the first clear indication that the majority has totally missed the mark in this case; the ’’consequence" of any part of a victim’s testimony is not for this Court to weigh, but for the jury to consider. Further, this case has to do with credibility and with impeachment evidence. It does not have to do with whether or not physical abuse occurred, but with the consistency and, as a result, the credibility of the statements of the victim C.K.
Next, the majority addresses Kowalski’s argument that the testimony was admissible under Rule 608(b), M.R. Evid. Since Kowalski concedes in his brief that the evidence was not admissible under Rule 608(b), this issue should not have been addressed.
The majority finally seems headed in the right direction when it raises Kowalski’s contention that the evidence was admissible under Rule 613(b), M.R.Evid., which allows extrinsic evidence of a witness’ prior inconsistent statement. Unfortunately, this is the last mention the majority makes of Rule 613(b); the Rule, and Kowalski’s entire argument on prior inconsistent statements, are never again taken up by the majority. Concluding correctly that both the State and the trial court improperly addressed the issue of “collateral matters” and that the ’’collateral matters rule" has been abolished in favor of a relevancy approach, the Court proceeds to make a confusing and incorrect application of Rule 401, M.R.Evid., and the Hammer case. It never comes back to the Rule 613 argument, apparently unable to difieren *176 tiate between the concepts of extrinsic evidence, collateral matters, and prior inconsistent statements.
An appropriate analysis under Rules 401 through 403 would conclude that the testimony at issue in this case was relevant and admissible. As the majority notes, relevant evidence “may include evidence bearing upon the credibility of a witness ....” Rule 401, M.R. Evid. Indeed, in a trial of the type before us, credibility is often the crucial determination to be made by the jury. It is quintessentially clear to me that the testimony at issue, relating to statements the victim made to the very witnesses who supported her truthfulness, and directly at odds with testimony she gave at trial, is relevant. Therefore, the evidence is admissible pursuant to Rule 402, M.R.Evid.
Rule 403 cautions, of course, that even relevant evidence may be excluded if its probative value is outweighed by one of the considerations mentioned in the Rule. None of those considerations is present here and, to its credit, the majority does not suggest otherwise. In any event, given the overwhelming importance of credibility in this case and, therefore, of other statements made by the victim which conflicted with her trial testimony, it is beyond me how the probative value could seriously be suggested to be outweighed. I conclude that the evidence was relevant and admissible under Rules 401 through 403, M.R.Evid.
Further, the majority’s reliance on Hammer to buttress its relevancy analysis is misplaced. In Hammer, the excluded evidence was of an assault victim’s prior traffic and misdemeanor offenses; it was offered both to impeach the victim’s credibility and, in conjunction with a self-defense theory, to show the victim’s violent tendencies. We held in Hammer, and rightly so, that the evidence was not relevant for either purpose; it did not reflect on the truthfulness of the witness and did not relate in any way to the probability of the assault against the victim having taken place. For reasons unclear to me, the Court went on in Hammer to reference Rule 403’s balancing test and conclude that the prejudicial effect of the evidence outweighed any probative value.
If the case before us were of the Hammer variety, I would agree with the majority’s analysis. The evidence at issue here, however, is not even superficially related to the type properly excluded in Hammer. Here we are faced with statements made by the victim which directly conflict with her testimony at trial.
*177 The majority completes its analysis of the issue by re-evidencing its inability to divorce itself from the “collateral matters” theory or to focus on the question of inconsistent statements by concluding that evidence of Kowalski striking C.K. “fails to make it more or less probable that he had sexual contact with ... C.K.” The evidence was not offered to prove that the physical contact occurred; that was not the “fact at issue” under Rule 401, M.R. Evid. The evidence was offered to impeach the credibility of the victim, as specifically authorized by Rule 401.
Under Rule 613(b), M.R.Evid., extrinsic evidence of a prior inconsistent statement of a witness is admissible if certain procedural safeguards are met. It is clear to me that the evidence Kowalski attempted to introduce was, indeed, extrinsic evidence of prior inconsistent statements by C.K. to the State’s two witnesses. The statements to them that her father had struck her were undeniably inconsistent with her sworn testimony at trial that he had never struck her; they were also inconsistent with her testimony denying that she ever told anyone that he hit her. As such, they constituted evidence going directly to C.K’s overall truthfulness. The evidence was “extrinsic” in that Kowalski wanted to introduce it through the witnesses to whom the inconsistent statements had been made, rather than through the victim herself. The Rule specifically allows for extrinsic evidence; the statements were both “prior” in time to the testimony given at trial by the victim and “inconsistent” with that testimony. I would hold that the evidence was admissible under Rule 613(b), reverse and remand.
JUSTICE TRIEWEILER joins in the foregoing concurring and dissenting opinion of JUSTICE GRAY.